

FILED by ___ D.C.
ELECTRONIC
FEB. 22, 2010
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **10-20095-CR-UNGARO/SIMONTON**

18 U.S.C. § 1349

UNITED STATES OF AMERICA

vs.

LEWIS B. FREEMAN,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1.    Lewis B. Freeman & Partners, Inc. ("LBFP") was a Florida corporation, which maintained offices located at 3225 Aviation Avenue, Suite 501, Miami, Florida 33133 and 6600 NW 16th Street, Suite #11, Plantation, Florida 33313.

2.    **LEWIS B. FREEMAN** was the president and sole shareholder of LBFP. All LBFP employees were under his supervisory authority.

3.    LBFP was in the business of providing corporate accounting services, including forensic accounting, fraud investigations, bankruptcy and dissolution consulting, business planning, creditor management, litigation strategy, and assistance with restructuring. LBFP professional employees, including accountants, non-practicing attorneys, former government officials and others,

frequently utilized the title of "principal" or "consultant," although none had ownership interests in the company.

4. In addition to serving as President of LBFP, **LEWIS B. FREEMAN** was frequently appointed by federal and state judges in Florida, including in the Southern District of Florida, as receiver, liquidating trustee, or assignee for the benefit of creditors on behalf of various entities. As receiver, liquidating trustee, and assignee for the benefit of creditors, **FREEMAN** regularly appointed LBFP, his own company, to assist in the carrying out of his duties.

5. A "receiver" is a neutral fiduciary appointed by a court, state or federal, as a provisional remedy provided by statute or under the court's general equity powers, in a variety of legal circumstances, including civil enforcement actions involving alleged fraud. The receiver represents the appointing court and is the medium through which the court acts. The general role of a receiver includes: 1) to hold, manage and operate businesses, real properties, and other forms of income producing assets; and 2) to cause the sale of the assets to realize cash. The receiver's duties and responsibilities are set by the court, generally specified in the appointing order. Receivers appointed pursuant to the court's equity powers are usually charged with locating, marshaling, and safeguarding assets for ultimate distribution to investors or consumers and determining whether the business for which the receiver is appointed can be operated legally and profitably. The term "receivership" is the legal name given to the situation where a court appoints a receiver.

6. A liquidating trustee is appointed by a Federal Bankruptcy Court in a Chapter 7 Bankruptcy proceeding. The liquidating trustee is the representative of the bankruptcy estate, and is a fiduciary charged with protecting the interests of all estate beneficiaries, including all creditors and debtors. The trustee also has the duty to keep records, make reports to the court, and give notice to

persons holding property in the estate. The trustee must secure for the estate all assets properly obtainable under the United States Bankruptcy Code. The trustee is accountable for all property received and has the duty and responsibility to safeguard all estate property that the trustee obtains by virtue of his appointment.

7.  An Assignee for the Benefit of Creditors is an appointment under Florida State law similar to a bankruptcy trustee under federal law. Under this proceeding, a debtor company, or assignor, voluntarily transfers its assets to the "assignee" who acts as a fiduciary to all of the assignor company's creditors. The assignee and assignor enter into a contract by which the assignor agrees to liquidate the assets assigned for the benefit of the creditors of the assignor company. The assignor and assignee must petition a Florida state court for this assignment, and the assignee must subsequently file reports of receipts and disbursements with the court. The assignee is responsible for liquidating the assets of the assignor's business at maximum value and has a duty to the creditors to safeguard these assets.

8.  In each appointment, including the following, **LEWIS B. FREEMAN** had a fiduciary duty to safeguard and protect all assets deposited into the corresponding fiduciary bank accounts:

   a.  **LEWIS B. FREEMAN** was appointed as Receiver for Professional Resources Systems International, Inc. ("PRSI") by a Judge in the State of Florida's 15th Judicial Circuit for Palm Beach County Circuit Court on or about January 13, 2000. As the Receiver for PRSI, **FREEMAN** opened Mellon Bank account number XXXX2192 ("PRSI fiduciary account").

   b.  **LEWIS B. FREEMAN** was appointed as Liquidating Trustee for Pacific Forrest Products Corporation ("Pacific Forrest") by a Judge in the United States Bankruptcy Court in the Southern District of Florida on or about December 21, 2007. As Liquidating Trustee for Pacific

Forrest, **FREEMAN** opened Mellon Bank account number XXXX8652 ("Pacific Forrest fiduciary account").

    c.    **LEWIS B. FREEMAN** was appointed as Receiver for Robert Kurland Mortgage ("Kurland") by a Judge in the State of Florida's 11th Judicial Circuit for Miami-Dade County Circuit Court on or about June 13, 2005. As Receiver for Kurland, **FREEMAN** opened Metro Bank account number XXXXXX8517 ("Kurland fiduciary account").

    d.    On or about December 12, 2000, a Petition for Assignment appointing **LEWIS B. FREEMAN** as Assignee for the Benefit of Creditors for MDCM Holdings, Inc., f/k/a Mortgage.com ("MDC") was filed, in the State of Florida's 11th Judicial Circuit for Miami-Dade County Circuit Court, submitting the assignment to that court's jurisdiction. As the MDC Assignee, **FREEMAN** opened Mellon Bank account number XXX-XXX323-2 ("MDC fiduciary account").

    e.    On or about December 21, 2007, a Petition for Assignment appointing **LEWIS B. FREEMAN** as Assignee for the Benefit of Creditors for America First Home ("AFH") was filed in the State of Florida's 18th Judicial Circuit for Seminole County Circuit Court, submitting the assignment to that court's jurisdiction. As AFH Assignee, **FREEMAN** opened Suntrust Bank account number XXXXXXXXX0561 ("AFH fiduciary account").

    9.    Co-Conspirator A was an employee at LBFP. Hired in or around 1992, Co-Conspirator A held various accounting positions in LBFP, and was ultimately promoted to function as the comptroller at LBFP. In this position, Co-Conspirator A performed all the bookkeeping related to LBFP's operating accounts and managed **LEWIS B. FREEMAN'S** personal finances. Co-Conspirator A also prepared financial reports, such as bank reconciliations and cash-flow reports, on a number of matters to which **FREEMAN** had been appointed as the fiduciary.

10. Co-Conspirator B was an employee at LBFP. Hired in or around 1998, Co-Conspirator B frequently assisted **LEWIS B. FREEMAN** and other principals of LBFP in the day-to-day functions required to maintain receiverships, liquidating trusteeships, and assignments for the benefit of creditors. Co-Conspirator B also performed the bookkeeping and prepared financial reports, such as bank reconciliations and cash-flow reports, on a number of matters to which **FREEMAN** had been appointed as the fiduciary.

11. LBFP maintained two operating accounts for the receipt and deposit of fees for its forensic services. One LBFP operating account was located at Mellon Bank, and had account number XXXX7050. The other LBFP account was located at Metro Bank, and had account number XXXXXXXX5307.

## Conspiracy to Commit Mail Fraud
### (18 U.S.C. § 1349)

12. From at least on or about June 16, 2000, through on or about August 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LEWIS B. FREEMAN,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with Co-Conspirator A, Co-Conspirator B, and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and causing to be delivered certain mail matter by the United States Postal Service and any private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice to defraud,

in violation of Title 18, United States Code, Section 1341;

## PURPOSE OF THE CONSPIRACY

13. It was the purpose of the conspiracy for **LEWIS B. FREEMAN** and his co-conspirators to misappropriate money from matters on which **FREEMAN** was appointed as fiduciary, by writing and causing the writing of unauthorized checks from fiduciary accounts that contained funds with which he was entrusted and by otherwise taking funds from fiduciary matters without authority and authorization. It was further the purpose of the conspiracy that **FREEMAN** would use the misappropriated money for his own personal benefit and the benefit of his family and to restore the balance of various fiduciary accounts under his control to conceal the deficiencies his misappropriation had created.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

14. When appointed receiver, liquidating trustee, or assignee for the benefit of creditors, **LEWIS B. FREEMAN** would establish and maintain separate bank accounts at federally insured banks, into which **FREEMAN** would deposit the receipts, revenues, and other assets belonging to the specific receivership, trusteeship, and assignments. **FREEMAN** would further use the fiduciary accounts to pay any expenses of the fiduciary.

15. When appointed as receiver, liquidating trustee, or assignee for the benefit of creditors, **LEWIS B. FREEMAN** would use his position to hire his company LBFP to assist him in carrying out his duties.

16. On or about January 20, 2000, **LEWIS B. FREEMAN** began issuing and causing

others to issue, from fiduciary bank accounts under his control, unauthorized checks made payable to either "Lewis B. Freeman" and to his company, LBFP. The payments set forth in these checks were not court authorized, and typically were not justified by legitimate work rendered or legitimate fiduciary expenses incurred in connection with the fiduciary matters.

17. These unauthorized checks included, but were not limited to, the following:

a. From on or about June 16, 2000, through on or about January 20, 2009, defendant **LEWIS B. FREEMAN** issued and caused others to issue from the UGI fiduciary account approximately 31 unauthorized checks, totaling approximately $1,162,456.55.

b. From on or about October 1, 2001, through on or about April 17, 2007, **FREEMAN** issued and caused others to issue from the PRSI fiduciary account approximately 22 unauthorized checks, totaling approximately $2,176,202.08.

c. From on or about June 4, 2001, through on or about October 1, 2004, defendant **LEWIS B. FREEMAN** issued and caused others to issue from the Sayet fiduciary account approximately 12 unauthorized checks, totaling approximately $109,177.32.

d. From on or about November 28, 2006, through on or about June 18, 2008, **LEWIS B. FREEMAN** issued and caused others to issue from the Kurland fiduciary account approximately 12 unauthorized checks, totaling approximately $560,671.59.

e. From on or about September 11, 2001, through on or about December 3, 2007, **LEWIS B. FREEMAN** issued and caused others to issue from the Pacific Forrest fiduciary account approximately nine unauthorized checks, totaling approximately $470,043.18.

18. After the unauthorized checks were issued, **LEWIS B. FREEMAN** instructed Co-Conspirator A to deposit the checks into LBFP's operating accounts. The funds were thereafter

transferred to the defendant's personal account, where the monies were used for the personal benefit of the defendant and his family.

19. To conceal the fact that he had misappropriated funds from fiduciary accounts under his control, **LEWIS B. FREEMAN** instructed Co-Conspirator A and Co-Conspirator B to create false financial reports which would omit the unauthorized checks that were issued to LBFP and "Lewis B. Freeman," and would depict falsely inflated account balances for the respective fiduciary accounts.

20. Many of these false reports were mailed, by a private and commercial interstate carrier, as part of official reports required to be submitted to the courts overseeing **LEWIS B. FREEMAN'S** fiduciary appointments.

21. To further conceal his misappropriation of fiduciary funds and to make up for shortfalls in fiduciary accounts created by his conduct, **LEWIS B. FREEMAN** issued and caused to be issued unauthorized checks from unrelated fiduciary accounts under his control and under the control of his employees at LBFP, which checks he then deposited into the depleted accounts, as follows:

    a. On or about January 14, 2008, **LEWIS B. FREEMAN** issued and caused others to issue an unauthorized check for $180,000 from the Pacific Forrest fiduciary account, payable to "Mellon Bank," which check was deposited into the unrelated PRSI fiduciary account to cover shortfalls created by **FREEMAN'S** previous misappropriation of funds from the PRSI fiduciary account.

    b. On or about April 20, 2009, **LEWIS B. FREEMAN** issued and caused others to issue an unauthorized check for $600,000 from the AFH fiduciary account, payable to "Lewis B.

Freeman, Receiver," which check was deposited into the unrelated PRSI fiduciary account to cover the shortfall created by **FREEMAN'S** previous misappropriation of funds from the PRSI fiduciary account

c.   On or about May 20, 2008, **LEWIS B. FREEMAN** issued and caused others to issue an unauthorized check for $400,000 from the MDC fiduciary account, payable to "Lewis B. Freeman," which check was deposited into the unrelated Pacific Forrest fiduciary account to cover the shortfall created by **FREEMAN'S** previous misappropriation of funds from the Pacific Forrest fiduciary account.

22.   From in or around June 2000 through in or around August 2009, **LEWIS B. FREEMAN** caused approximately 162 unauthorized checks to be issued from fiduciary accounts under his control or the control of LBFP employees, and misappropriated at least approximately $6 million from matters to which he had been appointed fiduciary, resulting in at least $2.6 million in losses to affected fiduciary matters.

All in violation of Title 18, United States Code, Section 1349.

_____
JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

_____
ANDREW K. LEVI
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

LEWIS B. FREEMAN,

                Defendant.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

Superseding Case Information:

**Court Division**: (Select One)

_X_ Miami    ___ Key West
___ FTL    ___ WPB    ___ FTP

New Defendant(s)    Yes ___ No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   
   I    0 to 5 days    _X_
   II    6 to 10 days    ___
   III    11 to 20 days    ___
   IV    21 to 60 days    ___
   V    61 days and over    ___

   (Check only one)
   
   Petty ___
   Minor ___
   Misdem. ___
   Felony _X_

6. Has this case been previously filed in this District Court? (Yes or No) ___
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No) _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes _X_ No

                                                  _____
                                                  ANDREW K. LEVI
                                                  ASSISTANT UNITED STATES ATTORNEY
                                                  Florida Bar No. 48774

*Penalty Sheet(s) attached                                                                        REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>LEWIS B. FREEMAN</u>

**Case No:**

Count #: 1

<u>Conspiracy to Commit Mail Fraud</u>

<u>Title 18, United States Code, Section 1349</u>

\* **Max. Penalty**: <u>20 years' imprisonment</u>

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**